[No. 15356.   Department Two.   April 7, 1920.]

Diamond Ice & Storage Company, *Respondent,* v. Klock Produce Company, *Appellant.*[1]

Judgment (183) — Conclusiveness — Finality — Judgment Reversed on Appeal. Where a judgment on a counterclaim in favor of a storage company for cold storage charges was not the final judgment in the case, but was on appeal set aside on the ground that the storage charges could not be litigated therein, it is not *res adjudicata* or a bar to another action to recover the storage charges.

Same (219)—Bar and Matters Concluded—Distinct Causes—Independent Cross-Complaint. A judgment against a cold storage company for damages to eggs injured by improper storage is not *res adjudicata* and a bar to a subsequent action by the storage company for storage charges which it did not set up in the former action; as it was not compelled to offset therein an independent cause of action.

Appeal (473)—Review—Former Opinion as Law of Case. A former decision on appeal that the pleadings did not show a former adjudication on the issues of fact is conclusive where on another trial the evidence added nothing to the pleadings.

Trover and Conversion—Title Transferred by Judgment and Satisfaction. Where a cold storage company refused to surrender

[1]Reported in 189 Pac. 257.

goods stored, and the owner elected to treat it as, and sued as for, a conversion, recovering judgment for the value, which was paid, the goods became the property of the storage company and plaintiff had no interest in the proceeds.

WAREHOUSEMEN (4, 5)—CHARGES—PAYMENT OF LOSS EQUIVALENT TO DELIVERY. Where a storage company makes good the losses sustained through breach of its contract by improper storage, the effect is the same as a proper delivery, entitling the company to recover the storage charges.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 21, 1918, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Samuel H. Steele,* for appellant.
*James B. Howe* and *A. J. Falknor,* for respondent.

FULLERTON, J.—In this action the respondent, Diamond Ice and Storage Company, sued to recover from the appellant, Klock Produce Company, the sum of $402.63, alleged to be due for the storage of certain cheese, butter, and eggs. The case has heretofore been before us on a question of pleading, and will be found reported in 103 Wash. 369, 174 Pac. 435. After the remand of the cause at the conclusion of that hearing, it was tried on its merits, the trial resulting in a judgment in favor of the respondent for the full amount claimed. This is an appeal from the judgment so entered.

As we said in the cited case, the complaint of the respondent is in the simplest form. It avers that, between March 20, 1914, and April 23, 1915, the appellant caused to be stored with the respondent cheese, butter, and eggs, for which storage the respondent agreed to pay the sum of $1,344.14; that no part thereof has been paid except the sum of $941.51, leaving a balance due of $402.63. The answer admitted the storing

with the respondent by the appellant of "certain cheese, butter, and eggs," but denied the other allegations of the complaint. Four separate affirmative defenses were also interposed. The first was a plea of payment; the second and third were to the effect that the claim had been adjudicated in prior actions between the same parties involving the same cause of action; and the fourth was a plea to the effect that it was not entitled to storage on the cheese because it refused to deliver the same when demanded and converted it to its own use, and that it was not entitled to storage on a part of the eggs because it so negligently stored them as to damage them for commercial use.

Noticing, first, the defenses of *res judicata*, it appears from the proof that, on June 8, 1915, the produce company brought an action against the storage company to recover a certain quantity of cheese which it alleged that the storage company had received from it on storage, giving a negotiable warehouse receipt for the same, and which cheese it had refused to deliver to the produce company on demand made therefor; further alleging a conversion of the cheese, that its value was $872.69, that it had paid as storage thereon $77.20 for which it had received no benefit, and demanded judgment for the value of the cheese. Answering the complaint, the storage company denied the conversion of the cheese, and alleged affirmatively that the produce company had theretofore stored with it a large quantity of cheese, butter, and eggs, which it had withdrawn and on which it had not paid the storage charges; averring further that it claimed a lien upon this particular lot of cheese as security for such unpaid charges. No counterclaim or set-off was interposed. All that it claimed was that it had the right to retain the cheese under its lien, and the relief asked was that

the produce company's action be dismissed. A reply was filed putting in issue the affirmative allegations in the answer, and on these issues a trial was entered upon before the court sitting without a jury. During the progress of the trial, the storage company asked and was granted leave to amend its complaint, "so as to ask for equitable relief, and that its lien be foreclosed and the cheese sold under it." The court allowed the amendment, and at the conclusion of the evidence, made findings in favor of the storage company, and adjudged that it had a lien upon the cheese for its storage charges, and directed that the lien be foreclosed and the cheese sold in satisfaction thereof. The produce company appealed to this court from the judgment entered, but, as it gave no supersedeas bond, the judgment was not stayed, and during the pendency of the appeal the storage company caused the cheese to be sold under the judgment of foreclosure.

On the appeal, this court reversed the judgment of the trial court, and directed that judgment be entered in its favor for the value of the cheese, which was fixed at the sum of $812.92. The case will be found reported in *Klock Produce Co. v. Diamond Ice & Storage Co.*, 90 Wash. 67, 155 Pac. 414. An examination of the opinion will show that the judgment was rested on the principle that this particular quantity of cheese could not be held for storage charges incurred in the storage of other commodities withdrawn without the payment of the charges due thereon, although the storage was by the same parties and the rights of no third persons had intervened. This court, in its opinion, further held that, since the storage company had not set up as a counterclaim or set-off the storage charges claimed to be due, no allowance in the judgment directed could be made therefor, saying, with reference to the allegation introduced by the equitable

amendment: "We cannot now, over plaintiff's objection [that is, the objection of the produce company] allow, as a substitute for the lien to which [the storage company] was not entitled, a counterclaim or set-off never pleaded and never prayed for." On the return of the remittitur in that case, judgment was entered for the sum directed, which judgment the storage company satisfied in full.

Arguing in support of the appellant's contention that the claim here in suit was litigated in the foregoing action, its learned counsel says:

"The identical question, on the identical debt, was in the cheese case pleaded, put in issue, tried on the merits in the superior court, a personal judgment entered on which a general execution could have issued, followed by the additional order for a special execution. The special execution issued at respondent's request and the cheese sold and bought in by respondent for $250, five-eighths of the judgment. This claim was not only used as a defense in the cheese case, but as a counterclaim. If not, on what was the respondent's judgment based? The costs adjudged to be due respondent and more than one-half of the judgment was collected by respondent by execution on that judgment. The judgment, after the enforcement thereof, was reversed. The question is, Can the respondent obtain and enforce a judgment and then be heard to say he had no judgment? Can he put in issue and try on the merits the same matter, keep the proceeds of the execution, and be heard to say that the issue and trial was not binding? Can he take a personal judgment in a case where only a counterclaim or offset could be the foundation of such personal judgment, enforce the judgment, and then be heard to say he presented no counterclaim? . . . These are questions presented by this record on this defense. . . . On both reason and authority I submit that such a proceeding is a bar to a new action on the same indebtedness. The courts should not be piecemeal shops. A litigant should have but one day in court on the same

question, whether successful or not.  If respondent is entitled to recover, then the law must be that no matter what the judges, no matter what the proof, no matter what the judgment, no matter whether the judgment has been enforced, if the judgment was finally reversed the judgment creditor has had no day in court and is entitled to maintain a subsequent action on the same indebtedness.''

This reasoning seems to us to be inconclusive.  While it is true that the question whether the storage company was entitled to recover the charges now in suit from the produce company was litigated on the trial of the action in the court below, and that a judgment was entered therein allowing a recovery for such charges, yet the judgment so entered did not become the final judgment in the action.  On the contrary, the judgment was set aside and held for naught at the further suit of the produce company, in which suit it procured a holding to the effect that these charges were not subject to litigation therein, and procured a judgment for the full value of the commodity for which it sued, without offsets of any kind.  Assuredly, this was not an adjudication of the claim now sued upon.  It was not held that the storage company had no right to recover the charges; it was but held that it did not plead its cause of action in such a manner as to make it justiciable in the particular proceeding.  The authorities generally hold that an estoppel will not be pronounced when it affirmatively appears from the whole record that the point in controversy was not actually adjudicated.  See *Marble Savings Bank v. Williams,* 23 Wash. 766, 63 Pac. 511, and cases there cited.

''A party will not be estopped from pursuing his proper and legal remedy because he made a mistake in attempting to enforce a remedy which he did not have.''  *Belt v. Washington Water Power Co.,* 24 Wash. 387, 64 Pac. 525.

In *Wilkes v. Davies,* 8 Wash. 112, 35 Pac. 611, 23 L. R. A. 103, we held there was no adjudication constituting an estoppel where the court did not determine the controversy because it·did not deem the remedy sought appropriate; and to the same effect is *Dunsmuir v. Port Angeles Gas etc. Co.,* 30 Wash. 586, 71 Pac. 9.

It is true that, in cases both before and since the decisions cited, we have used the broad expression that a judgment in an action is *res judicata* between the parties not only as to all matters there in issue, but as to all matters which might have been there put in issue. See *Perlus v. Silver,* 71 Wash. 338, 128 Pac. 661, and the cases there collected. But, as we said on another occasion, this "is rather a loose expression of the law"; and in more recent cases have refused to apply the rule in instances where the matter claimed to be adjudicated was independent of the matter sued upon in the action pleaded and which could have been asserted therein only by way of set-off or counterclaim. *Munson v. Baldwin,* 93 Wash. 36, 159 Pac. 1070; *Deaver v. Trahey,* 98 Wash. 63, 167 Pac. 68. In the latter case we said:

"It seems settled by the great weight of authority, in the absence of statute, that a defendant, having a cause of action against a plaintiff wholly independent of the claim and relief sought by the plaintiff in the particular action, is not bound to set up such independent cause of action as a defense in the action, even though his cause of action is such that he may be permitted to do so, but may bring an independent action to enforce his claim without being subjected to the plea of another action pending or of *res judicata* as a defense thereto."

See, also, the opinion rendered on the former appeal of the present case. *Diamond Ice and Storage Co. v. Klock Produce Co.,* 103 Wash. 369, 174 Pac. 435.

The third affirmative defense sets up a judgment obtained in an action brought by the produce company against the storage company to recover in damages for the depreciation in value of certain cases of eggs which it was averred had been injured by improper storage on the part of the storage company. The answer was a general denial, the storage charges here in issue not being set up as a counterclaim or set-off. It is the contention of the produce company that the charges should have been so set up, especially since a part of the charges sued upon arose from the storage of the very eggs. But we think this latter fact can make no difference in the principle involved. The fact that the charge arose out of the transaction which gave rise to the damage action might have given the storage company the right under the statute to set up the charges as a defense *pro tanto* to such damages as might be recovered therein, but it was an independent cause of action, nevertheless; and under the principle to which we have adverted in the discussion of the second defense, need not be set up under the penalty of having the claim adjudicated as barred. Moreover, the proofs at the trial added nothing to the pleadings, and hence our opinion on the former appeal (103 Wash. 369, 174 Pac. 435) is conclusive of the question. We there held that the pleadings did not show a former adjudication of the issues in fact or by way of estoppel.

The first affirmative defense needs no extended consideration. The proofs show that there has been no actual payment of the charges sued upon. In this connection, however, the appellant argues that the sum received for the sale of the cheese, had under the decree of foreclosure entered by the trial court which this court reversed, should be credited thereon. But we can conceive of no theory under which it can be held

that this sum of money belongs to the appellant. When the storage company refused to surrender the cheese, on its demand, the produce company elected to treat the refusal as a conversion and sue for its value. It did do so, and recovered a judgment for such value, which the storage company paid. The cheese thus became the property of the storage company, and clearly the appellant has no interest in anything the respondent may have received on its disposition.

Under the final assignment of error the appellant argues that the respondent is not entitled to recover storage charges on the eggs and cheese because it breached its contract of storage; that liability arises from the performance of contracts, not from their nonperformance; and hence there can be no liability here because it has been conclusively adjudged that there was no performance. But it is a sufficient answer to this to say that the storage company made good to the produce company the losses the latter sustained by its breach of performance. After these losses were made good, the produce company stood in the position in which it would have stood had the stored articles been returned to it in due course and without injury. In other words, if a warehouseman storing goods for another makes good to that other all losses caused by his negligent storing, it is equivalent to a proper delivery, and entitles him to his storage charges. In this instance, no account was taken of these storage charges in the proceedings had in settlement of the damage claims, and no reason exists for barring their recovery.

The judgment is affirmed.

HOLCOMB, C. J., BRIDGES, MACKINTOSH, and MOUNT, JJ., concur.